UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CARDELL ALSON, LENNARD BABB,
DESMOND BROOKS, ANTHONY COX,
JOHNNIE HOUSE, MAURICE FIELDS,
K'SHAWN HUNTER, ANTHONY LIVINGSTON,          22 CV 3665 (ENV) (RML)
CARLIEK MATTHEWS, GLEN NIVENS, JUDON
McLEOD, STARASIA McNEAL, OYAMA RIDLEY,
KYLE SAXON, ISAIAH SOLOMON, ROBERT
SOTO, ALLEN THORNTON, JACOB WILLIAMS,
THOMAS WASHINGTON, BOBBY WHIDBEE,
and TONY ZIMMERMAN,

                      Plaintiffs,                          **THIRD**
                                                        **AMENDED COMPLAINT**

     -against-

CITY OF NEW YORK, OMAR BIRCHWOOD,
EREK POWERS, ARTHUR McCARTHY,
COREY SESSA, DANA LADSON, CARLO
COTIGNOLA, STEVEN STOYAN, ANTONIO
DINUZZO, CARLO PAREDES, DAVID                **PLAINTIFFS DEMAND**
D'AMICO, JAMES FOWLER, PETER                 **A TRIAL BY JURY**
AMORELLO, ESTEPHANIE LUNA, TRINITY
FIELDS, SCOTT WITTER, and JOHN and JANE
DOES 1-15,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiffs Cardell Alson, Lennard Babb, Desmond Brooks, Johnnie House,

Anthony Cox, Maurice Fields, K'shawn Hunter, Anthony Livingston, Carliek Matthews, Judon

McLeod, Starasia McNeal, Glen Nivens, Oyama Ridley, Kyle Saxon, Isaiah Solomon, Robert

Soto, Allen Thornton, Jacob Williams, Thomas Washington, Bobby Whidbee, and Tony

Zimmerman, by their attorney, Michael Lumer, hereby allege upon information and belief:

## PARTIES, VENUE and JURISDICTION

        1.      Plaintiffs Cardell Alson, Lennard Babb, Desmond Brooks, Johnnie

House, Anthony Cox, Maurice Fields, K'shawn Hunter, Anthony Livingston, Carliek Matthews,

Judon McLeod, Starasia McNeal, Glen Nivens, Oyama Ridley, Kyle Saxon, Isaiah Solomon, Robert Soto, Allen Thornton, Jacob Williams, Thomas Washington, Bobby Whidbee, and Tony Zimmerman (collectively, "plaintiffs") are each adults who resided within the State of New York at all relevant times herein, or who were otherwise lawfully present therein.

2.      At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3.      At all relevant times hereinafter mentioned, defendant Omar Birchwood (Tax number 945512), was employed by the City of New York as a member of the NYPD. Defendant Birchwood is sued herein in their official and individual capacities.

4.      At all relevant times hereinafter mentioned, defendant Erek Powers (Tax number 944907), was employed by the City of New York as a member of the NYPD. Defendant Powers is sued herein in their official and individual capacities.

5.      At all relevant times hereinafter mentioned, defendant Arthur McCarthy (Tax number 949289), was employed by the City of New York as a member of the NYPD. Defendant McCarthy is sued herein in their official and individual capacities.

6.      At all relevant times hereinafter mentioned, defendant Corey Sessa (Tax number believed to be 959223), was employed by the City of New York as a member of the NYPD. Defendant Sessa is sued herein in their official and individual capacities.

7.      At all relevant times hereinafter mentioned, defendant Dana Ladson (Tax

941282), was employed by the City of New York as a member of the NYPD. Defendant Ladson is sued herein in their official and individual capacities.

8.     At all relevant times hereinafter mentioned, defendant Carlo Cotignola (Tax 967829) was employed by the City of New York as a member of the NYPD. Defendant Cotignola is sued herein in their official and individual capacities.

9.     At all relevant times hereinafter mentioned, defendant Steven Stoyan (Tax 964301) was employed by the City of New York as a member of the NYPD. Defendant Stoyan is sued herein in their official and individual capacities.

10.    At all relevant times hereinafter mentioned, defendant Antonio Dinuzzo (Tax 959598) was employed by the City of New York as a member of the NYPD. Defendant Dinuzzo is sued herein in their official and individual capacities.

11.    At all relevant times hereinafter mentioned, defendant Carlo Paredes (Tax 961068) was employed by the City of New York as a member of the NYPD. Defendant Paredes is sued herein in their official and individual capacities.

12.    At all relevant times hereinafter mentioned, defendant David D'Amico (Tax 957509) was employed by the City of New York as a member of the NYPD. Defendant D'Amico is sued herein in their official and individual capacities.

13.    At all relevant times hereinafter mentioned, defendant James Fowler (Tax 957512) was employed by the City of New York as a member of the NYPD. Defendant Fowler is sued herein in their official and individual capacities.

14.    At all relevant times hereinafter mentioned, defendant Peter Amorello (Tax 954485) was employed by the City of New York as a member of the NYPD. Defendant

Amorello is sued herein in their official and individual capacities.

15.    At all relevant times hereinafter mentioned, defendant Estephanie Luna (Tax 963621) was employed by the City of New York as a member of the NYPD. Defendant Luna is sued herein in their official and individual capacities.

16.    At all relevant times hereinafter mentioned, defendant Trinity Fields (Tax 967874) was employed by the City of New York as a member of the NYPD. Defendant Fields is sued herein in their official and individual capacities.

17.    At all relevant times hereinafter mentioned, defendant Scott Witter (Tax 964840), was employed by the City of New York as a member of the NYPD. Defendant Witter is sued herein in their official and individual capacities.

18.    At all relevant times hereinafter mentioned, defendants John and Jane Doe 1-15 (collectively the "Doe defendants") were members of the NYPD whose individual identities are not presently known to plaintiffs. The Doe defendants are sued herein in their official and individual capacities.

19.    At all relevant times hereinafter mentioned, the above individually named defendants (the "individual defendants"), including the Doe defendants, were acting within the scope of their employment by the municipal defendant and under color of law.

20.    The plaintiffs, other than Anthony Cox, Maurice Fields, Starasia McNeal, Glen Nivens, Oyama Ridley, Thomas Washington, Bobby Whidbee, and Tony Zimmerman, timely served Notices of Claim on the defendant City of New York.

21.    At least thirty days have passed since service of the plaintiffs' Notices of Claim, and the City of New York has neglected or refused adjustment and payment.

4

22.     Plaintiffs, other than Anthony Cox, Maurice Fields, Starasia McNeal, Glen Nivens, Oyama Ridley, Thomas Washington, Bobby Whidbee, and Tony Zimmerman, have complied with all obligations, requirements, and conditions precedent to commencing an action against New York City under New York law.

23.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

24.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

25.     One night in mid-to-late March 2021, the plaintiffs were lawfully present at 285 Junius Street in Brooklyn, New York (the "premises").

26.     The premises was a commercial building that housed commercial tenants.

27.     As of March 2021, plaintiffs Thornton and Alston were leasing a unit within the premises.

28.     One night in mid-to-late March 2021, believed to be March 20, 2021, the plaintiffs were present at the premises at the invitation of Thornton and Alston, and others who extended invitations with the consent of Thornton and/or Alston.

29.     None of the plaintiffs or other citizens present at the premises that night were trespassing.

30.     During the overnight hours of that evening in mid-to-late March 2021, various members of the NYPD arrived at the premises in multiple NYPD vehicles.

5

31.     These officers included, but were not limited to, some or all of the individual defendants.

32.     Upon information and belief there had not been any calls to 911 or 311 complaining of criminal activity at the premises in the hours prior to the NYPD's arrival at the premises.

33.     Upon information and belief, none of the NYPD members, including any of the defendants, possessed or were aware of a search, arrest, or bench warrant for the premises or any of the people present therein.

34.     None of the NYPD members, including any of the defendants, were invited into the premises nor were they given consent to enter.

35.     Notwithstanding the absence of any evidence of criminal activity, the NYPD members and defendants entered the premises with guns drawn, including machine guns and other, similar weapons.

36.     The NYPD members and defendants seized all of the people in and around the premises at gunpoint.

37.     All of the individuals at the premises were seized, detained, and otherwise in NYPD custody.

38.     At no time did probable cause exist for the arrest of any of the plaintiffs, nor was there any basis to reasonably believe that probable cause to arrest existed.

39.     The arrests were carried out by the individual defendants and at least some of the Doe defendants.

40.     The decisions to summon dozens of police officers to the premises, and

to utilize at least one police helicopter, and to deploy Emergency Services Unit ("ESU") officers to breach the premises while brandishing heavy weapons, was made by defendants Birchwood, Powers, and McCarthy (the "supervising defendants").

41.     Some of the individuals arrested, including the plaintiffs, were transported to a local area NYPD station house, where they were held in custody for a period of hours.

42.     The supervising defendants were responsible for overseeing the conduct of the officers on the scene and oversaw, approved, and authorized the arrests of the plaintiffs at the scene, as well as their transportation to a local station house, and the issuance of criminal summonses to the plaintiffs.

43.     Plaintiffs Alston and Nivens were subsequently transported to Kings County Central Booking, where they were jailed for many more hours.

44.     The remaining plaintiffs were given criminal summonses or desk appearance tickets, some or all of which were issued by defendants Sessa, Ladson, Cotignola, Stoyan, Paredes, D'Amico, Fowler, Dinuzzo, Amorello, Luna, Witter, and Fields, or by Doe defendants whose identities are still unknown.

45.     The issuance of the criminal summonses to the plaintiffs was done at the direction of the supervising defendants.

46.     Each of these summonses charged the plaintiffs with criminal trespassing.

47.     Each of these summonses were later dismissed.

48.     Defendants had no basis to believe that the plaintiffs were not lawfully present at the premises or were otherwise trespassing, nor was it reasonable for the defendants to believe that probable cause existed for plaintiffs' arrest for trespassing.

49.     Moreover, none of the plaintiffs were trespassing, as each was an invitee or guest of the lawful leaseholders, plaintiffs Thornton and Alston.

50.     No drugs, narcotics, or weapons were found at the premises or in any of the plaintiffs' possession.

51.     None of the plaintiffs were engaged in any criminal or illegal or otherwise unlawful conduct at the premises nor did the defendants have any basis to believe that they had probable cause to arrest any of the plaintiffs for any crime, offense, or violation.

52.     As a result of their arrest, each of the plaintiffs was handcuffed and held in custody for a period of hours.

53.     As a result of their arrest, each of the plaintiffs was required to appear in criminal court at a future date. While certain of these summonses may have been later dismissed, the criminal summonses and all attendant obligations remained in effect until the time of dismissal.

54.     The summonses were issued based on the knowingly false allegations that each of these plaintiffs was trespassing and otherwise engaged in criminal conduct, when, in fact, none of these allegations were true, and the defendants knew and understood that there was no basis for these plaintiffs' arrest or the issuance of the summonses.

55.     While Alston was in defendants' custody, one or more of the defendants drafted arrest paperwork concerning the Alston and Nivens arrests. In this paperwork, the defendant(s) falsely claimed, in part, that these plaintiffs were trespassing.

56.     This claim by the defendant(s) was materially false as Alston had every right to be in a space he was leasing and Nivens was lawfully present as a guest or invitee.

8

57.     The defendant(s) then forwarded, or caused to be forwarded, these false statements of fact, including the false statements made to support the issuance of the summonses, to the Kings County District Attorney ("KCDA") to justify the arrests and to persuade the KCDA to commence the plaintiffs' criminal prosecutions.

58.     The defendant(s) knew and understood that the KCDA was relying on the defendants to provide accurate and truthful information, and not to omit evidence or facts that may be favorable to those persons under arrest, or otherwise withhold information or mislead the KCDA in any way with respect to the facts and circumstances surrounding the arrest of the plaintiffs.

59.     Notwithstanding this knowledge, the defendant(s) lied to the KCDA about the material facts and circumstances surrounding the plaintiffs' arrest.

60.     For example, defendant Ladson told the KCDA that the defendants were conducting a "sweep . . . due to multiple 311 calls reporting noise and individuals hanging out inside of an abandoned commercial building." This statement was fundamentally false in that there were no 311 (or 911) calls concerning the premises that night, and there were certainly no calls about noise or people "hanging out." Moreover, the building was not abandoned. In short, nothing about Ladson's statement to the KCDA explaining the defendants' presence at the premises was true, nor was there a truthful explanation given to justify the decision to enter the premises without a warrant or to arrest the plaintiffs for trespassing despite the absence of any evidence that the plaintiffs were not permitted to be present.

61.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's

9

interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

(Section 1983 Claim for False Arrest by All Plaintiffs)

62.     Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

63.     The individual defendants willfully and intentionally seized, searched, detained, and arrested the plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

64.     The supervising defendants (Birchwood, Powers, and McCarthy) either participated directly in the seizure, search, and arrest of the plaintiffs, or else directed other officers seize, search, and arrest the plaintiffs.

65.     To the extent that any one of the defendants did not directly or personally participate in or supervise the arrest of any of the plaintiffs, each said defendant was aware that the plaintiffs were being seized and otherwise arrested at the time of the arrest, yet took no steps to intervene in the seizure in any way, nor did they take any action to prevent the handcuffing from occurring or continuing, nor did they take any steps to limit the continuing seizure and detention of these three plaintiffs in handcuffs outside of the premises.

66.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, economic damages,  incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

(Section 1983 Claims for Denial of a Fair Trial
and Malicious Prosecution by All Plaintiffs)

67.     Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

68.     The defendants caused the plaintiffs to be arrested for trespassing without a hint of evidence to support these warrantless arrests. Plaintiffs Thornton and Alston, who leased the premises at the time of the arrest, were themselves arrested for trespassing in their own leasehold. The remaining plaintiffs were invitees and guests but were arrested for trespassing nonetheless.

69.     The claims asserted and communicated by the defendants to prosecutors to the effect that the plaintiffs were present in a location where the plaintiffs knew they were not licensed or privileged to remain was plainly false.

70.     The defendants lied to prosecutors about the reason for their presence, and lied about the status of the premises by falsely telling the KCDA that it was "abandoned." The defendants further failed to provide a lawful explanation for their decision to enter the premises without a warrant.

71.     The individual defendants thereby caused the creation and communication of materially false statements to local prosecutors for the purpose of initiating the plaintiffs' criminal prosecutions. Their actions caused the plaintiffs to suffer a deprivation of liberty, and other injuries.

72.     By fabricating evidence or otherwise providing the KCDA with a false and misleading narrative, the individual defendants, individually and collectively, subjected the

11

plaintiffs to the denial of their right to a fair trial, and thereby violated and aided and abetted in the violation of the plaintiffs' rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

73. The defendants also caused the plaintiffs to be maliciously prosecuted by initiating or causing the plaintiffs' criminal prosecutions, doing so maliciously and despite the absence of probable cause for these prosecutions, which caused plaintiffs to suffer a deprivation of liberty, and other injuries. By so doing, the individual defendants, individually and collectively, caused the plaintiffs to maliciously prosecuted and thereby violated and aided and abetted in the violation of the plaintiffs' rights under the Fourth Amendment of the United States Constitution.

74. The supervising defendants are liable for this misconduct as they deliberately directed their subordinate officers to conduct the unlawful arrests and unlawful initiation of plaintiffs' prosecutions grounded on fabricated and falsified statements to prosecutors.

75. To the extent that any of the individual defendants did not personally participate in the fabrication of evidence or communications about said evidence with the KCDA, these individual defendants were aware that the arrests were made and were made without probable cause, and were equally aware that at least some of their fellow officers were fabricating evidence or communicating materially false or misleading information to the KCDA, and, despite ample opportunity to do so, failed to intervene in the unconstitutional conduct of their fellow officers, and so facilitated and encouraged the continuation of the misconduct.

76. By so doing, the individual defendants, individually and collectively,

12

subjected the plaintiffs to the denial of a fair trial and malicious prosecution, and thereby

violated and aided and abetted in the violation of the plaintiffs' rights under the Fourth, Sixth,

and Fourteenth Amendments of the United States Constitution.

77.    By reason thereof, the individual defendants have violated 42 U.S.C.

§1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish,

economic damages,  incarceration and the deprivation of liberty, and the loss of their

constitutional rights.

### THIRD CAUSE OF ACTION

(Section 1983 Claims for Unlawful Entry
by Plaintiffs Alston and Thornton)

78.    Plaintiffs Alston and Thornton repeat the allegations contained in the

preceding paragraphs above as though stated fully herein.

79.    The individual defendants, accompanied by the other members of the

NYPD present at the premises, smashed the glass and otherwise broke the front door to the

premises in order to gain entry. Once inside, the officers forcibly broke through a locked door to

an interior room where the plaintiffs and others were located.

80.    The defendants did not have a search warrant or any other warrant that

would permit their entry into the building or the closed and locked space within the building,

and they were aware that they did not have a warrant.

81.    The defendants did not have consent to enter the building or the closed

and locked space within the building, and they were aware that they did not have such consent.

82.    There were no exigent circumstances that would permit the defendants

and their fellow officers to enter the building or the closed and locked space within the building

13

without consent or a warrant.

83.     The defendants and their fellow officers, without a warrant, consent or exigency, searched the premises thoroughly during and after the plaintiffs' arrest.

84.     To the extent that any of the individual defendants did not personally participate in the entry and/or search of the premises, these individual defendants were aware that the entry and search were occurring but, despite ample opportunity to do so, failed to intervene in the unconstitutional conduct of their fellow officers, and thus further facilitated and encouraged the continuation of the misconduct.

85.     By so doing, the individual defendants, individually and collectively, subjected the plaintiffs Alston and Thornton to the unlawful entry and search of the premises they leased, and thereby violated and aided and abetted in the violation of these plaintiffs' rights under the Fourth Amendment of the United States Constitution.

86.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, economic damages,  incarceration and the deprivation of liberty, and the loss of their constitutional rights

## FOURTH CAUSE OF ACTION

(Section 1983 Excessive Force Claim by All Plaintiffs)

87.     Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

88.     The individual defendants personally pointed handguns and/or automatic rifles at the plaintiffs at the time of the unlawful seizure.

14

89.     The individual defendants caused or were aware that their fellow officers were also threatening the plaintiffs with deadly force by pointing loaded, operable guns at their heads and faces.

90.     The defendants deliberately acted to bring ESU officers to the scene for the purpose of having these ESU officers breach the premises, which the defendants knew and understood would result in the ESU officers entering the premises with heavy weaponry out and pointed at the plaintiffs.

91.     There was no reasonable basis for the defendants' threatened use of deadly force and visual menacing and intimidation of the plaintiffs, as the arrests themselves were merely for trespassing. None of the plaintiffs were charged with resisting arrest, acting disorderly, menacing or assaulting an officer, or simply harassment or menacing, or engaging in any other aggressive or threatening conduct.

92.     As a result of the defendants' violent and threatening conduct, the plaintiffs suffered emotional and physical injuries.

93.     By so doing, the individual defendants subjected the plaintiffs to excessive force, failed to intervene in the use of excessive force against plaintiff, and aided and abetted in the violation of, plaintiffs' rights under the Fourth Amendment of the United States Constitution.

94.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, a deprivation of liberty, and the loss of their constitutional rights.

## FIFTH CAUSE OF ACTION

(Section 1983 Unlawful Seizure of
Property Claim by Plaintiff Cardell Alston)

95.     Plaintiff Alston repeats the allegations contained in the preceding paragraphs above as though stated fully herein.

96.     During the course of his arrest the defendants seized $6,504 in cash from Cardell Alston.

97.     The money was vouchered by defendant Ladson in voucher 3001324574.

98.     The money was neither seized nor vouchered as arrest evidence or for forfeiture purposes. Rather, as the voucher completed by Ladson makes clear, the money was taken for safekeeping purposes.

99.     Defendant Ladson stated in the voucher that the money was seized from a "Carlell Alston," which misspelled Cardell Alston's first name by one letter.

100.     No person named "Carlell Alston" was arrested with the plaintiffs or was present with the plaintiffs or otherwise has any involvement in this case or connection to the money seized from Cardell Alson by the defendants.

101.     Prior to the commencement of this action plaintiff Alston repeatedly requested that the defendants return his money to him. Every such request was rejected on the ground that the owner of the money was Carlell Alston, not Cardell Alston.

102.     Plaintiff also requested that the defendants issue a corrected voucher to enable him to retrieve his money but they refused to do so.

103.     The defendants did not agree to cooperate in the return of Mr. Alston's money until after this action was filed, and it was not until November 28, 2022, when the Court

16

so-ordered a stipulation between the parties, that Mr. Alston was able to obtain his money.

104.     By so doing, the defendants effectively seize and asserted ownership over plaintiff's money without any legal basis or justification from about March 20, 2021, until at least November 28, 2022, which violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and thus deprived plaintiff of his money for more than 20 months, causing him to suffer pecuniary and emotional injuries.

## SIXTH CAUSE OF ACTION

(State Law Claims for False Arrest and Imprisonment by All Plaintiffs
Other than Cox, Fields, McNeal, Nivens, Ridley, Washington, Whidbee, and Zimmerman)

105.     Plaintiffs, other than Anthony Cox, Maurice Fields, Starasia McNeal, Glen Nivens, Oyama Ridley, Thomas Washington, Bobby Whidbee, and Tony Zimmerman, repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

106.     Plaintiffs were (i) arrested without probable cause and imprisoned against their will; (ii) maliciously prosecuted; and (iii) subjected to excessive force, battery, and assault by the defendants when they intentionally, willfully, maliciously, and/or with reckless disregard used physical force against the plaintiffs during the course of their arrests.

107.     At no time was there any objectively reasonable basis for the defendants to utilize the force that they chose to employ, nor was it reasonable for the officers to believe such force was justified, necessary, or otherwise permissible.

108.     The City of New York, is vicariously liable to plaintiff for the acts of the individual defendants who were at all relevant times acting within the scope of their employment as subordinate officers and agents of the municipal defendant.

109.    Therefore, the individual defendants and City of New York are liable to plaintiff under state law, for false arrest and false imprisonment, malicious prosecution, and excessive force, assault, and battery under New York law.

110.    By reason thereof, defendants have caused plaintiffs to suffer a deprivation of their liberty, loss of this constitutional rights, economic damages, emotional and physical injuries, and mental anguish.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

[Remainder of Page Intentionally Blank]

18

WHEREFORE, the plaintiffs demand judgment against the individual defendants and defendant City of New York as follows:

i.      actual and punitive damages against the individual defendants in amounts to be determined at trial;

ii.     actual damages against defendant City of New York in an amount to be determined at trial;

iii.    statutory attorney's fees pursuant to, inter alia, 42 U.S.C. § 1988 and New York common law, as well as disbursements, and costs of the action; and

iv.     such other relief as the Court deems just and proper.


Dated:   New York, New York
         January 4, 2024

                              LUMER LAW GROUP
                              Attorneys for Plaintiffs

                              _____
                              Michael Lumer, Esq.
                              14 Wall Street, Suite 1603
                              New York, New York 10005
                              (212) 566-5060

19